Good morning. The United States Court of Appeals for the Ninth Circuit is now in session. Thank you. Good morning everyone and welcome to the Ninth Circuit. We are here this morning for argument in the case of Perez-Castillo v. Bondi. You'll have 15 minutes per side and counsel for Mr. Perez-Castillo you can begin when you're ready. Please just let me know whether you'd like to reserve any time for rebuttal. Thank you your honor. I would like to reserve three minutes of my time for rebuttal. Great. Good morning your honors. May it please the court Chelsea Haley Nelson on behalf of petitioners Jose Perez-Castillo and Gladys Funes Alvarado. To resolve this case the court must independently determine the best reading of the persecutor bar without automatic deference to the attorney general's decision in Negussie 2 and decide whether that reading was applied to Mr. Perez-Castillo by the agency. The best reading of the statute places the initial burden on the government and identifies a duress defense. Now applying this best reading the agency erred below by placing the initial burden on Mr. Perez-Castillo by finding less than membership was sufficient to invoke the bar and by finding that Mr. Perez-Castillo could not rebut the bar through a duress defense where it's undisputed that he was forcibly recruited into the Salvadoran military. Now can you answer this for me? I went back and I'm reading the statute and I guess I'm having trouble with some of the language which seems to be a very strong textualist argument made by the government and in Negussie 2. How do I get around that argument? The language of the statute, your honor? Yeah, I mean there are a couple of places, for example, where Congress specifically included voluntary voluntariness requirements but didn't do so here. So how do we deal with those kinds of issues? Well, as to that argument whether Congress required voluntary action in other immigration nationality provisions, I actually think that that is irrelevant in this particular case, your honor. So the provisions cited by the government each describe acts that, unlike persecution, do not inherently exclude coerced conduct. So Congress had to include terms like voluntary in order to, in provisions because they otherwise might have construed to include involuntary acts. So use of the term voluntary excludes a broader range of conduct than acts coerced by threats of death or injury. So its inclusion and other provisions within the INA does not necessarily import an inference that Congress intended to encompass the narrower category of coerced conduct every time it did not include the term voluntary. Well, hold on. Where it indicated, for example, that there was exception for folks who were in the totalitarian party inadmissible, they included that voluntary language there. Why is that irrelevant? Well, the cases and what the government's relying on there, I'm sorry, your honor, is that they cite to the Displaced Persons Act, the Refugee Relief Act, the Holtzman Amendment, and the government's argument that those statutes were enacted and they are relevant and specifically applicable in this particular case to the persecutor bar, I believe is not applicable because those particular amendments and acts address specific conflicts asserting that they somehow provide guidance constraining the persecutor bar. The Displaced Persons Act, the Refugee Relief Act contain language that's different from the provisions of the persecutor bar before the court. The language bears little resemblance to the Refugee Act of 1980. Moreover, the statutes that were adopted to prevent admission of persons who support German nationalist socialists, they're very specific to a certain conflict and a particular time. The Holtzman Amendment addressed exclusion and removal of non-citizens associated with the Nazi regime and the government cites only to a single decision addressing the coercion issue and that decision relies on Fedorenko, which we believe is not dispositive of the court finding a duress exception in this particular case. But in terms of the burden issue, which we believe is the first issue that the court needs to address, this court has actually already decided the burden as to the persecutor bar. And although the Attorney General disagrees, post-Lippert Breit, we believe that the court no longer needs to defer to the agency's interpretation and conversely must follow its own case law. So in Budiano, the court applied the same burden of proof framework as in the persecutor bar and held that the government must make a threshold showing of definitive evidence as to each element of the bar before placing the burden on the applicant to rebut it. Budiano explained that the persecutor bar cannot apply where the applicant failed to affirmatively provide evidence rebutting the circumstantial evidence suggesting that he might have assisted in persecution. That's at 1048 of Budiano. And instead, Budiano said there must be some initial showing that each element of the statute could be met. Otherwise, we risk rejecting applicants who are in all other respects eligible for relief simply on the basis of vague association. So in Budiano, in Kumar, in Miranda Alvarado, this court has made clear that threshold evidentiary showing is one borne by the government and it requires more than just circumstantial evidence suggesting that the non-citizen might have assisted in persecution. And there must be enough evidence to support a specific finding as to each element of the bar. May I go back to your reference to Fedorenko. So is it your position that the persecutor bar contains a true duress defense or like the footnotes in Fedorenko that his conduct doesn't rise to the level of assistance in persecution? We believe that the statute includes a duress exception and that Fedorenko, as I mentioned, is not dispositive of finding that duress exception because the provision that was reviewed in Fedorenko was the Displaced Persons Act, not the persecutor bar. The language is very different. The sentence structure is different. The DPA also focused on a specific set of individuals and used language closely tied to a very specific factual set of circumstances. Although Nogucitu cites to Fedorenko for a categorical bar, Fedorenko didn't make such a categorical bar. We believe that the Fedorenko court recognized that certain conduct cannot be assisted in the persecution of civilians, that's at 512, and acknowledged that the other distinctions might be harder to draw. Now decades after Fedorenko, the U.S. Supreme Court also expressed concern over excluding individuals and victims of persecution from refugee protection and acknowledged that motive and incentive and voluntariness may be relevant to the proper interpretation of the statute. In addition, we believe that a duress defense exists because as detailed in our supplemental brief to the court, the legislative history and the context of the Refugee Act show that Congress intended a duress defense. When Congress enacted the Refugee Act, it made clear that U.S. refugee policy should align with the purpose and history and language of the 1967 Protocol and the 1951 Convention relating to the status of refugees. Because Congress intended this conformity, the persecutor bar should be interpreted in light of those commitments. So going back to the Article 1FA of the 1951 Convention and you rely on that and also I note that the 1967 Protocol only incorporates Articles 2 through 34 of the Convention. So why isn't that some evidence of Congressional intent to put aside 1FA as under the 1951 Act as opposed to the 1967 Protocol? Well because Congress included the persecutor bar specifically to be consistent with Article 1F of the of the Convention, the Exclusion Clause. And 1F references international instruments that incorporate defenses to liability that were well established at the time of the drafting which included a duress exception. And I just want to point out Respondent makes an argument that the duress is not supported in the persecutor bar because it deals with criminal law and this is civil immigration law, but we think that that's irrelevant. Congress enacted the statute, the persecutor bar statute, to implement obligations under the Protocol and the Convention and the exclusion requires that these instruments are expressly limited to criminal conduct because they specifically use the language, quote, any person with respect to whom there are serious reasons for considering that he's committed a crime against peace, a war crime, or a crime against humanity. And because the treaty obligations permit only exclusion of criminal conduct and Congress enacted the persecutor bar to conform domestic law to those obligations, the only possible conclusion here is that Congress intended the exclusion to describe criminal violation or criminal conduct. Council, what do we what do we make of the fact that Congress reenacted the persecutor bar for withholding and enacted a persecutor bar for OIRA already knowing that at that point the BIA had held that there was no duress exception and then they didn't add an explicit exception. So, what do we make of that? Yeah, so again, the government makes the argument or contends that the 1996 recodification ratified this bar, but the U.S. Supreme Court has made clear that Congress must be aware of an administrative interpretation in order to ratify it. That's Brown v Gardner, 513 U.S. 115 1994, where it says when there is evidence that Congress was aware of an administrative interpretation, this court considers reenactment to be without significance. The government does not provide any evidence that Congress at the time was aware of a single sentence and a single decision by the Board of Immigration Appeals prior to that enacted. So, and then decades later, again, we have the Supreme Court in Negussie questioning the statute and the bar's clarity and indicating that a duress exception might be read into the statute itself. So, I don't think that the argument that the government's making that this is recodification, I don't think that that is, in fact, as strong as the government makes it out to be. In this case, we believe that a duress exception should be read into the statute for the reasons that I mentioned, but also when Congress enacted the provisions to bring the U.S. into compliance with its treaty obligations, interpreting these obligations imposed by international instruments, the court accords considerable weight to opinions of sister signatories, and multiple courts around the world have recognized excluding persons from refugee status who are not criminally responsible for their actions undercuts the Convention's protective goals. Multiple countries, including Canada, the U.K., Australia, New Zealand, and Norway have explicitly recognized that conduct performed under duress is just not encompassed within the Exclusion Clause. This jurisprudence should be important to be considered by the court in determining whether a duress exception exists and should weigh in favor of a determination that Congress reached the same conclusion and the prosecutor bar should be construed in the same manner. So, we believe that recognizing a duress defense conforms with the statute and congressional intent, international obligations, and it's historical application. Now, if the court agrees with us as to the burden, it may remand on that issue. If the court agrees that the statute includes a duress exception, it also must remand to the agency because a duress exception was never previously considered by the agency in this case. So, it's not presently before the court whether or not Mr. Perez-Castillo would qualify for such a duress exception. I realize that my time, I'm beyond the three minutes. Unless the court has any further questions, I'd like to reserve the remainder of my time for rebuttal. Well, I'll give you three minutes for rebuttal. Thank you. Thank you. As to the burden issue, as we mentioned, I believe that the court has... No. Well, yeah. Well, I'll let you have three minutes when you're back up for rebuttal. Okay. Thank you so much, Your Honor. Then I'll reserve the rest of my time. You're going to reserve the rest of your... Yeah. Okay. Okay. We'll hear from the government now. Thank you. Good morning, Your Honors, and may it please the court. My name is Stephanie Hennis, and I'm here for the respondent. This is not a case about duress. The petitioner in this case is not credible, and he cannot establish duress with his not credible testimony. But even accepting that he was forced to serve in the Salvadoran military, he still can't show any duress because the Supreme Court and every circuit, including this one, has required an immediate threat of death or serious bodily injury to establish duress. And the petitioner here has never even alleged that, let alone proven it. But even if the court decides to address whether there is a exception to the persecutor bar, it should defer under Skidmore to the attorney general's 35-page thorough and persuasive decision holding that a duress defense does not exist. I want to understand your position because you said he can't show duress. But that assumes that there is a persecutor bar, and that wasn't actually what was decided below. So I'm having some trouble understanding if we were to decide that there's no persecutor, if there is a persecutor bar, then game over for the plaintiff, right, for the petitioner. But there, well, there is a persecutor bar. Are you saying that there's, that it, are you addressing whether it would apply in this case? Yeah, right. But my question really is, is the question of application before us with respect to duress, or is that really a legal question? Well, so our point in addressing this is that there, the petitioner has maintained that duress should be an excuse for the bar in this case. But there's never been any testimony about him engaging in specific acts, because he's refused to be transparent with immigration authorities about his acts, that have been taken under threat of death or serious bodily injury. And amicus, this court, the Supreme Court, all agree that that is an element of duress. So my point here is that the petitioner is not credible, and whether there is a duress exception or not, it doesn't matter in this case, because the adverse credibility finding and the lack of evidence just stops him from being able to show duress at all. But I guess to also get, I suspect that the court is interested in the, whether there is a duress. I think it'd be better if you move on from the argument. Yeah, go ahead. So the court should defer to the Attorney General's decision in matter of negusie. Skidmore deference remains intact after the Supreme Court's decision in Loper-Bright, and this court has already deferred to a published agency decisions using Skidmore deference after Loper-Bright. Some of the things that the court looks for when deciding whether deference is appropriate is the thoroughness of the agency decision. And here we have a decision that is 35 pages long. It analyzes the specific statutory terms. It considers the board's rationale in negusie one and explains why it is incorrect, and also considers the arguments that negusie had made to the board relating to international sources and criminal concepts. On top of that, the INA itself dictates that the Attorney General's rulings with respect to all questions of law shall be controlling. Secondly, the court looks at the validity of the agency decision. And here the Attorney General does exactly what the Supreme Court asked it to do when it remanded negusie. It conducts an analysis of statutory interpretation. Negusie did not rule out the possibility for there to not be a duress exception to the persecutor bar. It simply said that Fedorenko was not controlling because Fedorenko dealt with a statute that provided two juxtaposed provisions, one that included voluntariness and another that did not. So the court was looking at the plain meaning of that statute and said the agency could not simply look at that and then translate it over to a different statute. But it left to the agency the ability to consider whether Congress's use of voluntary terms is relevant in the statute at hand. And that's exactly what the Attorney General did here. The Attorney General first looked at the fact that there is no express voluntariness or duress exception provided in the statute. Now, the Attorney General did not stop there, though, recognizing that that's not dispositive. But he did point out that the courts generally declined to read words into statutes that do not appear there. Then the court went on, the Attorney General went on to consider statutes that contain similar language to that used by Congress in the persecutor bar, and they have all been found to not have a duress exception. So relying on that, the Attorney General used the maxim that consistent use of the same language regarding the same subject matter and the same statute strongly suggests the same meaning. The DPA has no exception for duress or coercion, and the same is true for the Refugee Relief Act of 1953. There are numerous other provisions that the Attorney General refers to in his decision, but I point out those two because Petitioner does rely on the legislative history of the persecutor bar, and that legislative history shows that Congress believed that this persecutor bar would be consistent with the DPA and the Refugee Relief Act, both of which do not have an exception for actions taken under duress. Also, in this case, you know, one of the reasons that was mentioned in Loper-Bright was the flip-flopping or the changing of administrative positions and trying to give some consistency to those. Does it matter here that the first Ngozi was the BIA, but then Ngozi Tu is actually the Attorney General himself overturning that? What does that mean procedurally? Procedurally, it means that there really isn't any major change in implementation here. What we have is the board reaching a decision in a two-to-one decision, so two board members inferred, found that it was reasonable to infer a duress exception, and one board member determined that it was not. Given that split, the Attorney General certified the case to himself to resolve that dispute. The Ngozi 1 decision that inferred a duress exception was only available for about four and a half months versus, as the Attorney General pointed out in his decision, about 70 years of statutory analysis of similar terms saying that there is no duress exception to the persecutor bar. Additionally, this court in Lopez actually deferred to a board decision that revisited its prior precedent. It involved whether certain theft offenses constitute crimes involving moral turpitude. This court looked to the fact that there had been a long-standing view that whether something is a temporary versus permanent taking was relevant to the determination of whether something was a theft CIMT, and the agency changed its position. It did so in a reasoned decision, and this court actually upheld the board's decision even though it had adjusted its understanding of what constituted a CIMT. Basically, when looking at this history, you want us to conclude that Ngozi 1, that's the outlier, and that everything else has been consistent with the outcome that you're arguing for today? Yes. Yes, Your Honor. Apart from Ngozi 1 simply being the outlier, the AG's decision is the one that does engage in the textual-based analysis of the statute. What's missing from the board's decision and the petitioner's interpretation of the statute is any reference to the statutory terms themselves. While they point to the legislative history discussing some desire to bring the definition of refugee in line with the protocol or the convention, Congress did not use words that were pulled from the convention or the protocol. Congress used words that came from established domestic law, and that's the terminology that the Supreme Court has to look at here. That is also a reason why the Supreme Court's discussion in Cardozo-Fonseca is not controlling. In that case, the Supreme Court was looking at the INA's refugee definition and said that it was virtually identical to the one in Article 1.2 of the convention. It looked at these international documents to determine the meaning, but here the language is not nearly identical to the convention. Instead, it pulls from prior domestic law. On top of that, even in Cardozo-Fonseca, the court did initially begin its analysis with the statutory text, which is exactly what the AG did here. The additional international documents that Petitioner relies on, one of which postdates the statutory, the Refugee Act itself. It was issued in 2003. The handbook, while that was issued in September 1979, that did postdate the Refugee Act hearings, which occurred in March and May 1979, and the Senate Judiciary Committee report, which was dated in July 1979. The United States joined the 1967 Protocol only after concluding that it was, quote, largely consistent with existing law. In INS V. Stevik, the Supreme Court recognized that the means of entry, and instead it formalized prior policies and practices, and that it would not require the United States to admit new categories or numbers of aliens. And as I had mentioned before, the committee report noted that the Refugee Act would add language specifically to exclude from the definition of refugee those who engaged in persecution, and that this was consistent with the U.N. Convention and with the DPA and the Refugee Act. I guess one final point is that even after Loper, Bright, and the elimination of Chevron, to the extent that you have an agency that is providing its understanding of treaty terms, that remains something that is entitled to deference. This court addressed this issue similar to this in Rana v. Jenkins, and held that Loper, Bright did not impact the longstanding principle that courts give deference to the executive's understanding of treaties. So, to the extent that the Attorney General was analyzing what was meant by these treaties, that review remains deferential. Does the court have any additional questions? I don't think we do. Thank you very much. Thank you, Your Honor. Okay, and now we'll have three minutes for rebuttal. Thank you. Thank you, Your Honor. Just give us a second. Okay, go ahead. All right. Thank you so much. So, Your Honor, even though despite all the arguments that the respondent has made here in terms of deference and the Skidmore deference, we still believe under the Loper, Bright framework that the court should reject any agency statutory reading that is not one of the court after applying all the relative or relevant interpretive tools concludes is the best. So, it's still this court's responsibility to determine what is the best reading of the persecutor bar using all of those tools. In terms of, I think the respondent makes much about international materials being irrelevant and also speaks to the protocol not being self-executing, but Post Loper, Bright, again, using statutory interpretations, all of the tools are required to be used to determine the best reading. The canon of Charm and Betsy elevates the importance of reading statutes in a manner that's in accordance with relevant international law to determine the best reading of a statute and an act of Congress ought not to be construed to violate the law of nations if any other possible construction is possible. As previously mentioned, we believe that Congress's objective and intention here in implementing U.S. obligations under the U.N. protocol and the convention was to bring the U.S. into conformity with international definition of refugee. So, those international materials are distinctly relevant to understanding what Congress's intent was into drafting this. The government also makes much of the fact that Mr. Perez-Castillo was not credible and that, therefore, he can't qualify for any duress exception. That actually is irrelevant as well. It's not before this court whether or not he was credible. This court, if it finds that the best reading includes a duress exception, it still must remand to the agency in order for the agency to decide whether or not Mr. Perez-Castillo is eligible for any duress exception. He was never afforded the opportunity to present such a defense. It wasn't recognized as an option. Therefore, he didn't present evidence testimonial or otherwise in support of a duress exception. So, he should be afforded the opportunity again if the court recognizes that exception and remands. The government suggests that Neguse 1 is actually the outlier. We believe that that's incorrect, that even under Skidmore, no weight should be placed on the reasoning. The reasoning is not only invalid, but it does represent an abrupt departure from the prior agency interpretation and application in this case. Ultimately, we believe that if the court does not find that a duress exception can be read into the statute, it can still resolve this case on the issue of burden because the government, the statute itself includes a burden on the government in order to establish the elements of the persecutor bar in the first instance. That did not happen here by the agency. Even if the court found that the agency did apply the initial burden to the government, there simply is not enough evidence in this record to invoke the bar as to Mr. Perez-Castillo. Okay, thank you very much. We thank both counsel for their helpful arguments this morning. This case is now submitted and our court stands adjourned. Thank you. This court for this session stands adjourned. Thank you.
judges: McKEOWN, THOMAS, MENDOZA